UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KELSEY K.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. 3:23-cv-06144-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 3. Plaintiff challenges the ALJ's decision finding that plaintiff was not disabled. Dkt. 5, Complaint.

After plaintiff's application for SSI was denied initially and upon reconsideration (AR 156, 174), a hearing was held before an ALJ in October 2020 (AR 70–106). The ALJ issued a decision finding plaintiff not disabled in February 2021 (AR 12–35) which was subsequently reversed by this Court in June 2022 (AR 2112–24).

Another hearing was held before the ALJ on May 23, 2023. AR 2048–84. The ALJ issued a decision finding plaintiff not disabled on August 25, 2023. AR 2017–47.

Plaintiff did not file exceptions with the Appeals Council, making the ALJ's decision Commissioner's final decision subject to judicial review. *See* 20 C.F.R. § 416.1484(a).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

DISCUSSION

**1. Plaintiff's statements regarding subjective symptoms**

Plaintiff argues the ALJ failed to properly assess her subjective symptom testimony. Dkt. 10, Opening Brief. She testified she only leaves her house around three days a week and is "lucky if [she] can take a walk around the block." AR 2059. When she leaves her house, she needs someone to go with her in case she falls or has a breakdown or gets overwhelmed. AR 2064, 308.

Plaintiff stated that at least two days a week, she was bedridden and unable to walk beyond her living room and bathroom. AR 2069–70. She sometimes had to use a

2

cane for ambulating. AR 2072. In her function report, plaintiff stated that she had difficulties with lifting, squatting, bending, standing, walking, sitting, kneeling, stair climbing, memory, and completing tasks. AR 309. She testified in her first hearing that she required a cart for walking long distances (AR 85), that it hurt to bend or pick up things (AR 85), that pushing or pulling caused pain (AR 86), and she also experienced pain during walking or sitting for a long period (*id.*).

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In assessing a Plaintiff's credibility, the ALJ must determine whether Plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

1. Objective Medical Evidence

The ALJ discounted plaintiff's testimony based on purported inconsistencies with objective medical evidence. *See* AR 2033–35. Inconsistent medical evidence can be "weigh[ed] as undercutting [Plaintiff's] testimony" but "an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022).

Discounting plaintiff's testimony about her physical symptoms, the ALJ found inconsistent with that testimony evidence that plaintiff was able to walk on examination

and mostly normal sensation, range of motion, tenderness, breathing and coordination. AR 2033, 2035, 2038. The ALJ discounted plaintiff's testimony about her need to use an assistive device because her gait was described as normal without an assistive device. *See* AR 2033. Yet the evidence identified by the ALJ is not inconsistent with plaintiff's testimony about her physical limitations. An ability to walk in the brief context of an examination is not inconsistent with testimony that plaintiff cannot walk distances. Nor does any of the evidence cited by the ALJ reveal anything related to plaintiff's abilities to sit for prolonged periods or to bend, lift, or move without pain.

As this Court noted in its previous order, "multiple doctors and other medical professionals diagnosed back, and shoulder, impairments that were extremely painful." AR 2117 (citing AR 584–85, 1227–29, 1529, 1552, 1597, 1623, 1632, 1635, 1638, 1766, 2006). Considering the record as a whole, the ALJ's finding that plaintiff's testimony about her physical limitations was inconsistent with the objective medical evidence was not supported by substantial evidence.

However, the ALJ did properly discount some of plaintiff's subjective symptom testimony based on its inconsistency with evidence. The ALJ found that plaintiff's normal respiratory functioning was inconsistent with any alleged limitations stemming from her asthma and that her evidence showed she had no complications stemming from her diabetes. *See* AR 2033, 2035. Plaintiff does not raise arguments challenging these assessments (*see* Dkt. 10 at 8–10), and, therefore, the Court finds they were not erroneous.

The ALJ discounted plaintiff's testimony about the extent of her mental impairments based on mental status examinations showing she had normal mood,

affect, behavior, thought content, and judgment. AR 2034–35. The ALJ reasonably found this inconsistent with plaintiff's testimony that her mental impairments made it difficult to be outside unaccompanied.[1]

Plaintiff also challenges the ALJ's assessment of her obesity, contending his consideration failed to comply with SSR 19-2p. Dkt. 10 at 9. The Court, in its previous order, found that the ALJ properly considered plaintiff's obesity in a manner compliant with SSR 19-2p. AR 2119. The ALJ gave the same consideration to plaintiff's obesity in his second decision as he did in his first decision. *See* AR 18, 20, 24, 2023, 2030. The law of the case doctrine "generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Id.* (citing *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012)). The Court therefore declines to reconsider its finding that the ALJ's consideration of plaintiff's obesity complied with SSR 19-2p.

2. Activities of Daily Living and Inconsistent Statements

The ALJ discounted plaintiff's testimony because it was purportedly inconsistent with her activities of daily living. AR 2039. An ALJ may discount a claimant's testimony based on daily activities that either contradict their testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The ALJ cited evidence plaintiff was "able to shop in stores, take care of her activities of daily living, prepare simple meals, manage money, use public transportation, and perform light household chores." AR 2039. These activities are not

---

[1] The ALJ also summarized some parts of plaintiff's function report in which she described her ability to perform some mental tasks—"she had no problems getting along with others, she was never fired from a job because of problems getting along with others, she can socialize, she can follow instructions, she finishes what she starts, and she can pay attention." AR 2039 (citing AR 304–15).

5

inconsistent with her testimony. Plaintiff acknowledged she went to stores and sometimes left home and did not testify that she was completely incapacitated while at home. *See* AR 2069–70. As this Court noted in its previous order (AR 2118), plaintiff required the use of a DSHS-paid caregiver for her transportation and activities of daily living (AR 82, 357) who, at the time of her most recent hearing, was approved to work with plaintiff 168 hours per month (AR 2070). Given this evidence, the ALJ's finding that plaintiff was able to independently care for herself and take care of her activities of daily living was not supported by substantial evidence.

The ALJ also discounted plaintiff's testimony because of inconsistent statements. AR 2031–32. An ALJ can consider "prior inconsistent statements" in rejecting a claimant's testimony. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The ALJ cited statements that were inconsistent with plaintiff's testimony that—as the ALJ described it—plaintiff "spends significant time in her bedroom or on the couch, that she 'just can't move,' and that she can't even pick up her child." AR 2031.

As an initial matter, this description is not supported by substantial evidence in the record of plaintiff's testimony. Plaintiff testified she was "bedridden" (or "confined to the bedroom or the bed for . . . a large majority of the day") on a "bad day," which she testified occurred "at least two days a week." *See* AR 2069–70. She did not testify this occurred every day. *See id.* Although she did testify, she "probably leave[s] the house about three days a week," the modifier "probably" suggests this was an attempted estimate of her general routine rather than a comprehensive accounting of all the times she left her house over the four-year relevant period. *See* AR 2059. She did testify going out in public was difficult due to some logistical requirements (she lived far from a

bus stop and tried to have someone with her when she left) but did not testify she never left her home. *See* AR 2064.

Most of the alleged inconsistencies cited by the ALJ related to activities like shopping, cooking, and attending some appointments. *See* AR 2031–32. As discussed, these are not inconsistent with her testimony. Some of the alleged inconsistencies simply showed plaintiff left the house—the ALJ cited, for instance, two treatment notes indicating plaintiff went to a casino and one indicating she "went to a lot of places" to assist her boyfriend with finding housing. *See* AR 2031. Such evidence that plaintiff occasionally left her home is not necessarily inconsistent with her testimony. Additionally, both statements were made in 2019; plaintiff made no statements in her 2020 hearing indicating she was as limited in her ability to leave the house (*see* AR 84–89).

Some of the alleged inconsistencies involved plaintiff's work experience. The ALJ cited a few statements suggesting plaintiff worked during the relevant time. *See* AR 2032–33. Plaintiff testified she attempted two positions but was unable to do either because of her impairments. *See* AR 2057–58. "It does not follow from the fact that a claimant tried to work . . . and, because of [her] impairments, failed, that [s]he did not then experience pain and limitations severe enough to preclude . . . substantial gainful employment." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007). Commissioner makes additional arguments regarding plaintiff's testimony about her work attempts (*see* Dkt. 12 at 4) but the ALJ made no such finding (*see* AR 2032–33). The Court does not consider such inconsistencies. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) ("Although the inconsistencies identified by the district

court could be reasonable inferences drawn from the ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make, and ours only to review.").

   3.  Treatment

The ALJ discounted plaintiff's testimony because it was inconsistent with conservative treatment. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). This is because "prescribe[ing] only 'conservative treatment' . . . suggest[s] a lower level of both pain and functional limitation." *Johnson*, 60 F.3d at 1434.

Here, the ALJ did not have substantial evidence to support a finding that plaintiff's treatment was conservative, nor did the ALJ have substantial evidence to support an inference that she experienced a lower level of pain. Her treatment involved physical therapy, and medications taken daily which she alleged caused numerous side effects. AR 88–89, 298–99, 311, 3441-3449. The record shows her treatment for pain was complicated by obesity and diabetes.

Additionally, the ALJ failed to inquire as to whether further treatment was available, or any other reasons plaintiff may have had for not seeking further treatment. *See* SSR 16-3p ("We will not find an individual's symptoms inconsistent with the evidence in the record on [the] basis [of the conservative nature of their treatment or their failure to seek further treatment] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."); *see also LaPeirre-Gutt v. Astrue*, 682 F. App'x 662, 664 (9th Cir.

2010) (unpublished opinion) ("A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist.").

Here, the record reflects an assessment by Dr. Andrew Tsoi, MD in March 2018, finding that plaintiff had moderate limitations due to a combination of impairments, and could perform sedentary work; and an assessment from Dr.Louis Enkema, MD, in September 2018, that plaintiff had osteoarthritis in her lumbosacral back with radiculopathy and sciatic pain, was severely limited due to chronic pain and other symptoms, and would be unable to perform even sedentary work for at least six months. AR 376-383 (Dr. Tsoi), 471-478 (Dr. Enkema).  Dr. Robert Hander, MD, on 2-21-2018 found that plaintiff would be able to (with normal breaks) stand or walk for a total of two hours in an 8 hour work day, and would be able to sit for about six hours in an eight-hour work day,  reported that sedentary capacity "seems generous." AR 148-151. On reconsideration, Dr. J.D. Fitterer on 8-9-2019 agreed with Dr. Hander's assessment of plaintiff's ability to perform a job that would require two hours of standing or walking, and six hours of sitting. AR 184.

Dr. Christine Macatuno, MD, reported on October 26, 2020 her assessment that plaintiff would be able to sit for 30 minutes, and stand for 10 minutes, at one time, and would be able to sit and stand/walk for a total of less than two hours in an eight-hour work day, with breaks that are unscheduled every 15 to 30 minutes, for 15 minutes each, due to pain. AR 2007. Dr. Macatuno stated that plaintiff's impairments had lasted, or would be expected to last at least twelve months. AR 2006. A central disc protrusion at L3-L4 and L4-L5 condition was diagnosed in November of 2020 (AR 2874-2875); physicians suggested the potential for surgical interventions in 2020 and 2022-2023 but

9

1  providers indicated such interventions were inappropriate due to plaintiff's obesity or
2  diabetes. *See* AR 2338, 2370, 2581, 2710-2712. The record also shows plaintiff
3  received a diagnosis, after an MRI on December 4, 2022, of mild degenerative disc
4  disease and facet arthropathy. AR 3460. The MRI indicated, "1. . . . .The most
5  significant abnormality occurs at the L3-L4 level where a central disc protrusion has
6  resulted in a mild to moderate central canal stenosis and a mild left subarticular recess
7  stenosis. 2. A right paracentral disc protrusion at the L4-L5 level results in a mild central
8  canal stenosis and mild bilateral subarticular recess stenosis. 3. No neural foraminal
9  stenoses identified. . . . ." AR 3460 (emergency department notes by Dr. Heather R.
10 Bowman, MD).

11       Because medical providers advised that surgery apparently was not a viable
12 option, purportedly conservative nature of her treatment was not a valid basis on which
13 to discount plaintiff's testimony.

14       The ALJ also noted at various points in his decision that plaintiff's condition
15 "improved" with treatment. *See* AR 2033–35, 2038–39. But the ALJ made no finding
16 that plaintiff's conditions were effectively controlled by such treatment. *See id.* "[S]ome
17 improvement" in a person's symptoms "does not mean that the person's impairments no
18 longer seriously affect her ability to function in a workplace." *See Holohan v. Massanari*,
19 246 F.3d 1195, 1205 (9th Cir. 2001).

20       This Court's previous order required the ALJ to discuss the alleged side effects of
21 plaintiff's daily medications. AR 2120. The Court noted the alleged "side effects included
22 exhaustion (constant), brain dysfunction, depression, constipation, nausea." *Id.* (citing
23 AR 88–89). The ALJ did so in a single sentence while describing plaintiff's activities of
24
25

daily living: "While the claimant reports debilitating side effects from her medication, the aforementioned level of activity is not consistent with her allegations of severe and debilitating physical and mental symptomatology." AR 2039. As discussed, the ALJ did not adequately assess plaintiff's activities of daily living, and, therefore, the ALJ did not adequately assess plaintiff's allegations about her medication side effects.

4. Harmless Error

The Court has found the ALJ failed to provide adequate reasons for discounting plaintiff's testimony about her abilities to stand, walk, sit, lift, and bend, as well as her allegations of medication side effects. Because that testimony would potentially result in additional limitations in the residual functional capacity assessment (RFC), the RFC is deficient, and the error is not harmless. *See Carmickle v. Comm'r. Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

2. **Whether the Court should reverse with a direction to award benefits.**

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017).

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited

> evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). The Ninth Circuit emphasized in *Leon* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. *Leon*, 80 F.3d at 1045.

Here, plaintiff asks that the Court remand for an award of benefits based on the ALJ's errors in evaluating plaintiff's subjective testimony. The Court has found several errors in the ALJ's evaluation of plaintiff's statements about symptoms and limitations, several of which repeated errors of the prior ALJ in the Commissioner's previous decision. The second prong of the credit-as-true analysis is therefore satisfied.

In *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004), the Ninth Circuit "clarif[ied] that in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." The Court found the ALJ would be required to find plaintiff disabled on remand if her testimony were credited because Benecke's activities were "quite limited and carried out with difficulty," she attempted to manage her pain, and she unsuccessfully attempted to return to work. *Id.* at 596.

The Court found the record established the claimant could not perform gainful employment, and remand for award of benefits was appropriate. *Benecke v. Barnhart*, at 596.

Like *Benecke,* in this case the plaintiff's activities were "limited and carried out with difficulty" as they were carried out with the help of a caregiver 168 hours per week (AR 2070) and, plaintiff testified, at the time of the second hearing she could not leave her bed and surrounding areas about twice a week (AR 2069-2070). Plaintiff underwent efforts to manage pain with multiple medications each day (AR 297-299), and she attempted to return to work but was unsuccessful (AR 2057-2058).

The Court is mindful that plaintiff applied for benefits nearly six years ago, that this Court has considered this case previously, and that providing another opportunity to assess improperly evaluated evidence does not qualify as a remand for a "useful purpose" under the first part of the credit as true analysis. *Garrison*, 759 F.3d at 1021-22, (citing *Benecke v. Barnhart*, at 595 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.")).

However, based on a review of the record, the Court concludes that the record is not free from important and relevant conflicts regarding date of onset, and the Commissioner has the responsibility for resolving ambiguity in the medical evidence. In this case plaintiff had a caregiver working 69 hours per month when she testified at the first hearing (AR 357) and at the time of the second hearing she testified that her caregiver worked 168 hours per month (AR 2069-2071) having increased from 158 hours; and about two days per week, she experienced her "worst" bedridden days when she could not leave her bed and surrounding areas. There is ambiguity in the record concerning identification of the point in time during the relevant four-and-a-half-year period between the date of application and the date of the second hearing, when

plaintiff's symptoms and limitations got to the point where she was having bedridden days about two days per week. Ambiguity concerning date of onset requires a remand for additional proceedings. *Diedrich v. Berryhill,* 874 F.3d 634, 638 (9th Cir. 2017). The medical evidence is ambiguous about the extent to which plaintiff would or would not be able to sustain employment in a sedentary occupation. *See* AR 2006-2010. When such outstanding issues remain, the Court "cannot deem the erroneously disregarded testimony to be true; rather, the court must remand for further proceedings." *Dominguez v. Colvin*, 808 F.3d 403, 409 (9th Cir. 2015); *see also Washington v. Kijakazi,* 72 F.4th 1029, 1041-1042 (9th Cir. 2023).

Therefore, a remand for additional proceedings is the appropriate remedy.

CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings to resolve ambiguity in the record regarding the medical evidence of spinal pain and sciatic pain, side effects of medications, and date of onset, consistent with this Order.

Dated this 8th day of October, 2024.

Theresa L. Fricke
United States Magistrate Judge